UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JANE DOE                                    CIVIL ACTION

VERSUS                                      NO: 11-1532

FORMER THIBODAUX POLICE                     SECTION: R(5)
OFFICER CORREY MORRIS, *ET AL.*

**ORDER AND REASONS**

Plaintiff moves for summary judgment on the vicarious liability of defendant the City of Thibodaux and on the duty to indemnify of defendant The Travelers Indemnity Company ("Travlers"). For the following reasons, the Court grants plaintiff's motion for summary judgment on vicarious liability and denies the motion on Travelers' duty to indemnify.


**I.   BACKGROUND**

This is a civil rights action filed by plaintiff against defendants, the City of Thibodaux, the Thibodaux Police Department, former Thibodaux Police Chief Craig Melancon, Former Thibodaux Mayor Charles Caillouet, former Police Officer Corey Morris, and The Travelers Indemnity Company. Plaintiff alleges that she was intoxicated and asked Officer Morris for a ride to her residence. She alleges that after arriving at her apartment complex, Morris escorted her to her apartment and then had sex with her without her consent after she passed out.

Plaintiff brought claims against the defendants under Louisiana law and 42 U.S.C. 1983. She now seeks partial summary judgment that the City of Thibodaux is vicariously liable under Louisiana Law for Morris's alleged intentional torts against her.[1] She also requests a partial summary judgment ruling that Travelers is required to indemnify the other defendants for any liability arising from plaintiff's claims.[2]

**A. Factual Background**

On August 27, 2010, plaintiff was a 22-year-old French exchange student at Nicholls State University living in Thibodaux, Louisiana. She had drinks at two Thibodaux bars, the Library and the Last Call, and requested that defendant Corey Morris, who was on duty as a patrolman for the Thibodaux Police Department ("The Department"), drive her to her nearby on-campus apartment. Morris was in full uniform and driving a marked police car. The Department had a custom and policy that its on-duty patrolmen would honor requests to drive intoxicated people home.

Once they arrived at her apartment complex, Officer Morris escorted plaintiff to her door and entered her apartment. He left his police car running in the parking lot with the lights on. Before leaving her apartment, Morris inserted his penis into

---

[1] R. Doc. 73.

[2] R. Doc. 66.

plaintiff's mouth and vagina. The parties dispute certain details of the encounter and whether the sex was consensual.

Plaintiff testified that she threw up in the bathroom of the Last Call and then vomited again when she went outside of the bar with her friend.[3] She said that she asked a police officer to drive her home because she was intoxicated, and Morris agreed.[4] On the way home, she said she felt sick and asked Morris to stop the car, and when he did, she vomited outside the car without getting out.[5] According to plaintiff, when she and Officer Morris arrived at her apartment complex, officer Morris opened the rear car door for her and assisted her up the steps to her second-floor apartment.[6] She testified that she had trouble getting her key into the door lock.[7] She recalled throwing her shoes into the kitchen and "crashing" on her bed.[8] She testified that after that, she heard and felt things, but was too intoxicated to move her body.[9] She did not recall Morris walking in, but recalled

---

[3] R. Doc. 73-4 at 70-72.

[4] *Id.* at 76-77.

[5] *Id.* at 79-81.

[6] *Id.* at 83-84.

[7] *Id.* at 84.

[8] *Id.* at 84-88.

[9] *Id.* at 88.

hearing the steps of someone walking and the sound of Velcro.[10] Plaintiff said that she felt someone flip her over onto her back and put his penis into her mouth.[11] She testified that she does not recall vaginal intercourse, but when she awoke, she knew she had had vaginal intercourse.[12]

Morris testified that on the night in question, he was working a 6:00 p.m. to 6:00 a.m. night shift patrolling the east side of downtown Thibodaux.[13] He said that he was parked near the Last Call when plaintiff approached him, said she had had a couple of drinks, and requested a ride home.[14] He testified that during the drive, plaintiff said her stomach hurt, so he stopped and opened her door to give her some fresh air.[15] He said that he continued to her apartment and parked in the middle of the parking lot.[16] According to Officer Morris, when he opened the rear door of his car, plaintiff got out and asked him if he wanted to come up for a drink of water.[17] He said that when they

---

[10] *Id.* at 89-92.

[11] *Id.* at 93.

[12] *Id.* at 93-94, 102.

[13] R. Doc. 73-5 at 21.

[14] *Id.* at 23-35.

[15] *Id.* at 38.

[16] *Id.* at 43.

[17] *Id.*

went inside of her apartment, she gave him a glass of water, and they sat on her bed talking.[18] He testified that she started dozing off, and he got her a wet paper towel and dabbed her head, which was in his lap.[19] Morris testified that plaintiff took off all of her clothes except her underwear.[20] According to Morris, she kissed him on the mouth, rubbed his penis through his pants, and told him to get a condom from a vanity drawer.[21] He testified that he got the condom, and they started having sex.[22] He said that he decided to stop having sex with her after one or two minutes and gathered his things and left.[23] He acknowledged that he was on duty and had his police radio on the entire time and would have responded to any calls that came across the radio.[24] He testified that he left the apartment complex, stopped at a truck stop to urinate, and then continued with his patrol, ending his shift at 6:00 a.m.[25]

---

[18] *Id.* at 52-53.

[19] *Id.* at 53.

[20] *Id.* at 61.

[21] *Id.* at 66, 69-70.

[22] *Id.* at 76.

[23] *Id.* at 79-80.

[24] *Id.* at 57-58, 80.

[25] *Id.* at 89-90.

Craig Melancon, the Former Chief of the Thibodaux Police Department, testified that it was the custom and policy of the Thibodaux Police Department, and within the scope of a police officer's duties, for an on-duty police officer to drive an intoxicated person home upon request.[26] This policy requires the officer to report his origin and destination over the radio, which Morris did in this case.[27] When Morris arrived at plaintiff's apartment, he called in his final destination and time and put himself back into service as available.[28] He did not say that he was helping plaintiff to her apartment.[29] If he had told his dispatcher that he was assisting her to her door, that would have been in line with Department policy.[30]

It is undisputed that in the aftermath of the events at issue, Officer Morris pleaded guilty to malfeasance in office.

## II. STANDARD

### A.   SUMMARY JUDGMENT

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the

---

[26] R. Doc. 74-7 at 14-15.

[27] *Id.* at 21-23, 32-33.

[28] *Id.* at 46-47.

[29] *Id.* at 48.

[30] *Id.* at 52.

movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);
*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
When assessing whether a dispute as to any material fact exists,
the Court considers "all of the evidence in the record but
refrain[s] from making credibility determinations or weighing the
evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.
Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable
inferences are drawn in favor of the nonmoving party, but
"unsupported allegations or affidavits setting forth 'ultimate or
conclusory facts and conclusions of law' are insufficient to
either support or defeat a motion for summary judgment." *Galindo
v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)
(quoting Charles Alan Wright & Arhur R. Miller, *Federal Practice
and Procedure Civil* 2d § 2738 (1983)).

If the dispositive issue is one on which the moving party
will bear the burden of proof at trial, the moving party "must
come forward with evidence which would 'entitle it to a directed
verdict if the evidence went uncontroverted at trial.'" *Int'l
Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th
Cir. 1991). The nonmoving party can then defeat the motion by
either countering with sufficient evidence of its own, or
"showing that the moving party's evidence is so sheer that it may

not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 332).

## III. Analysis

### A. No Issue of Material Fact Precludes Summary Judgment on Plaintiff's Claims of Vicarious Liability Under State Law

The City of Thibodaux and Travelers argue that the City cannot be held vicariously liable under Louisiana law for the

8

torts committed by Officer Morris because he was not acting within the course and scope of his employment with the Police Department when he engaged in sexual activity with the plaintiff. Plaintiff responds that Morris was in the course and scope of his employment because he was on duty, in uniform, and generally acting within the Department's policies authorizing officers to transport intoxicated people to their homes and to monitor individuals who might need medical care. Based on Louisiana precedent, the Court finds that plaintiff is entitled to summary judgment that Morris was acting within the course and scope of his employment at the time of the incident.

The principle of vicarious liability or respondeat superior is codified in Louisiana Civil Code article 2320. This article provides that an employer is liable for the tortious acts of its employees "in the exercise of the functions in which they are employed." The issue for the Court is whether Officer Morris's alleged torts against the plaintiff were sufficiently employment-related that vicarious liability attached. Vicarious liability is not exclusively a question of law; rather it is a mixed question of fact and law. *Russell v. Noullet*, 721 So. 2d 868, 871 (La. 1998); *Bates v. Caruso*, 881 So. 2d 758, 761 (La.App. 4th Cir. 2004).

The Louisiana Supreme Court has outlined the parameters of the test for vicarious liability as follows:

> While the course of employment test refers to time and place, the scope of employment test examines the employment-related risk of injury. The inquiry requires the trier of fact to determine whether the employee's tortious conduct was "so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests."

*Russell,* 721 So. 2d at 871 (quoting *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974)). In *Lebrane*, the Louisiana Supreme Court identified four factors to be considered in determining vicarious liability: (1) whether the tortious act was primarily employment rooted; (2) whether the tortious act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. *LeBrane*, 292 So. 2d at 218; *see also Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996). It is not necessary that all four *Lebrane* factors be met in order to find vicarious liability. *See Bates*, 881 So. 2d at 762.

Each case must be decided on its specific facts. *Id.* Generally, an employee's actions are within the course and scope of his employment if "the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Orgeron v. McDonald*, 639 So. 2d 224, 226-27 (La. 1994).

10

That the primary motive of the employee is to benefit himself does not prevent the tortious act of the employee from falling within the scope of his employment. *Ermert v. Hartford Ins. Co.*, 559 So. 2d 467, 477 (La. 1990). If the purpose of serving the employer's business actuates the employee to any appreciable extent, the employer is liable. *Richard v. Hall*, 874 So. 2d 131, 137-38 (La. 2004). "The scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks." *Id.* at 139. In negligence cases, the focus is on the employee's general activity at the time of the incident. *Ermert*, 559 So. 2d at 478; *Richard*, 874 So. 2d at 139. However, in intentional tort cases, such as this one, the Court must determine "whether the tortious act itself was within the scope of the servant's employment." *Ermert*, 559 So. 2d at 478. Importantly, "that the act is proscribed or performed in a forbidden manner does not remove the act from the scope of employment." *Price v. La. Dept. Of Transp. and Development*, 608 So. 2d 203, 210 (La. App. 4th Cir. 1992) (citing *Lebrane*, 292 So. 2d 216).

In police cases, Louisiana courts give special weight to the authority wielded by on-duty police officers in performing the vicarious liability analysis. *See Applewhite v. City of Baton Rouge*, 380 So. 2d 119 (La. App. 1st Cir. 1979). In *Applewhite*,

the court held the City of Baton Rouge vicariously liable for a police officer's rape of a woman while he was performing duties for the city. The plaintiff in that case was walking along the highway with companions when a uniformed on-duty officer ordered her into his police car to be taken to jail for vagrancy. *Id.* at 120. The officer then parked his car and forced the plaintiff to engage in sex. *Id.* The officer was later convicted of malfeasance in office. *Id.* In a civil suit brought by the victim, the City of Baton Rouge maintained that the officer's actions were far removed from the course and scope of his employment. The court found otherwise, emphasizing that the officer "was on duty in uniform and armed, and was operating a police unit at the time of this incident." *Id.* The court found significant that the officer "was able to separate the plaintiff from her companions because of the force and authority of the position which he held." *Id.* The court reviewed Louisiana case law in the police context and concluded that it consistently held employers responsible for transgressive police behavior even if the conduct was not squarely within the officer's usual duties. *Id.* (citing *Cheatham v. Lee*, 277 So. 2d 513 (La. App. 1st Cir. 1973) (holding City of Baton Rouge vicariously liable for battery committed by police officer who was in uniform and armed but off duty chaperoning private party outside of city limits); *Bourque v. Lohr*, 248 So. 2d 901 (La. App. 1st Cir. 1971) (insurer of City of New Iberia

12

cast in judgment for certain torts committed by an off-duty,
uniformed police officer while using his private vehicle)). The
*Applewhite* court summarized the position of the Louisiana courts
as follows:

> In short, ... where it is found that a law enforcement
> officer has abused the "apparent authority" given such
> persons to act in the public interest, their employers
> have been required to respond in damages. This is
> particularly true where, as here, the officer is on
> duty.

*Applewhite*, 380 So. 2d at 122.

Similarly, in *Latullas v. State*, 658 So. 2d 800 (La. App.
1st Cir. 1995), the Louisiana First Circuit Court of Appeal held
the State of Louisiana liable for a prison guard's rape of a
prisoner on prison grounds while the guard was in charge of a
prisoner work crew. The court reasoned that the guard was able to
separate the plaintiff from others and commit the rape because of
the authority bestowed upon him by his employer. *Latullas*, 658
So. 2d at 804. The court acknowledged that the rape was "totally
unauthorized ... and motivated by ... personal desires." *Id.* The
court nevertheless found vicarious liability because the rape
occured while the guard was "acting for his employer in the
control and supervision of inmates, and it was through these
duties that this opportunity arose." *Id.* at 804-05.

In a similar vein is *Turner v. State*, 494 So. 2d 1292 (La.
App. 2nd Cir. 1986). There a recruiting officer for the Louisiana

National Guard induced four women to believe that he had the
authority to conduct physical exams, during which he touched them
inappropriately, while interviewing them for induction into the
National Guard. *Id.* at 1296. The court found the State
vicariously liable for the recruiting officer's acts because the
incident was made possible by the apparent authority of the
position the officer held with his employer. *Id.*

The relevant facts in this case are undisputed. Morris was
on duty, in uniform, and driving a marked police car when he
agreed to drive plaintiff, a college student, home from a bar
where she had been drinking. The Thibodaux Police Department
authorized on-duty patrolmen to drive intoxicated people home
when requested. Upon arriving at plaintiff's apartment complex,
Morris accompanied her upstairs and into her apartment, where he
engaged in sexual activity with her. Morris had his firearm and
patrol radio on him at all times and would have responded to
calls that came across the radio.

This case is like *Applewhite*, *Lattulas,* and *Turner*, because
Morris, like the aggressors in those cases, was in a position to
commit the sexual act only because of the authority of his
position and the policies of the police department. Defendant
Travelers attempts to distinguish these cases because Morris did
not use his authority to *force* plaintiff into a private area (as
in *Applewhite* and *Latullas*), or to make plaintiff believe that

14

she must allow him to have sexual contact with her (as in *Turner*). But it was nevertheless the unique position of authority and trust given to police officers in society that created the context in which Morris was able to take plaintiff back to her bedroom alone. The courts in *Applewhite*, *Lattulas,* and *Turner* found that when an officer's position of authority creates a relationship between the officer and a member of the public within the context of the officer's official duties, and that relationship gives rise to the opportunity and commission of a rape or sexual assault, that harm is attributable to the employer. This reasoning does not require coercion, only a duty-driven relationship between the officer and the victim giving rise to the officer's opportunity to commit the sexual act.

Craig Melancon, the Former Chief of the Thibodaux Police department, testified, and the parties do not dispute, that it is within the duties of an officer to take intoxicated individuals home upon their request and to assure their safety.[31] Thus, Morris was acting within the scope of and course of his duties when he had sex with plaintiff, and his employer, the City of Thibodaux is vicariously liable for his conduct.

Defendants' focus on non-police cases to avoid vicarious liability is unavailing. Defendants rely primarily on the Louisiana Supreme Court's application of the vicarious liability

---

[31] R. Doc. 73-7 at 63.

15

standard in *Baumeister v. Plunkett*, 673 So. 2d 994 (La. 1996). In
*Baumesiter*, a nursing supervisor sexually assaulted a clinical
technician in a hospital nurses' lounge while the two were
working their shifts. *Id.* at 995-96. The Supreme Court found no
vicarious liability because, although the third and fourth
*LeBrane* factors were satisfied, neither the first, nor the second
*LeBrane* factor was met:

> Regarding the incident to performance of duties factor,
> a supervisor may foreseeably become involved in a
> dispute with a "recalcitrant underling." It is also
> quite foreseeable and reasonably incidental to the
> employee's duties that security guards and doormen may
> fight with unruly patrons. The likelihood, on the other
> hand, that a nursing supervisor will find an employee
> alone in the nurses' lounge and sexually assault her is
> simply not a risk fairly attributable to the
> performance of the supervisor's duties. A nursing
> supervisor's responsibilities do not include sexually
> oriented physical contact with a co-employee. And it is
> not at all foreseeable from the perspective of the
> hospital that such conduct will take place on hospital
> premises during working hours. We conclude that [the
> supervisor's] actions were not reasonably incidental to
> the performance of his employment duties.

*Id.* at 999 (internal citations omitted). Defendants argue that,
like the nursing supervisor in *Baumeister*, a police officer's
responsibilities do not include sexually oriented physical
contact with either the general public or co-employees. But this
argument ignores the unique position of trust and authority
enjoyed by police officers that was the focus of the decisions in
*Applewhite*, *Lattulas,* and *Turner*. The assaulter in *Baumeister* did
not occupy a similar position of authority or trust that enabled

16

the assault. Armed police officers can exert physical power to control and protect citizens, whether the citizens are intoxicated or not. A nursing supervisor does not have such power over another nurse.

Moreover, Louisiana law distinguishes between torts by an employee against another employee and those committed against a non-employee. In fact, the *Baumeister* court distinguished *Samuels v. Southern Baptist Hospital*, in which a Louisiana Court of Appeal held a hospital liable for a nursing assistant's rape of a patient. *Baumeister*, 673 So. 2d at 999 n.2 (citing *Samuels v. S. Baptist Hosp.*, 594 So. 2d 571, 574 (La. Ct. App. 1992), *writ denied*, 599 So. 2d 316 (La. 1992)). Like the *Applewhite* court, the *Samuels* court emphasized that the employee was put in a position of authority by his employer, which allowed for private contact with the patient victim. *Samuels*, 594 So. 2d at 574. The *Baumeister* court was clear that its holding did not extend to cases like the present one and *Samuels*, in which "taking care of [the victim's] well-being was part of [the] employee's duties and rape was reasonably incidental to the performance of these duties." *Baumeister*, 673 So. 2d at 999 n.2.

Further, the Louisiana Supreme Court's decisions finding no vicarious liability in *Russell,* and *Brasseaux v. Town of Mamou*, 752 So. 2d 815 (La. 2000), are distinguishable because they involved *off-duty* police officers engaging in personal pursuits.

17

In *Russell*, the Supreme Court held that an off-duty police officer's assault of a bystander and shooting into a crowd of people were outside of the course and scope of his employment. *Russell*, 721 So. 2d at 870-71. The officer and his brothers were at a social gathering when one of the brothers got into a fight that escalated into a brawl. *Id.* The officer attempted to break up the fight, assaulted a bystander who was writing down his license plate number, and shot his gun to protect himself from a pursuing mob. *Id.* at 871-73. Unlike the officer in *Russell*, officer Morris's allegedly illegal conduct occurred when he was on duty and in uniform. Further, it was through his work duties that the opportunity for the misconduct at issue arose.

In *Brasseaux*, the officer was off duty, not wearing his uniform, and drinking at a bar, when his friend started a fight. *Brasseaux*, 752 So. 2d 815. The officer showed his badge to protect his friend and himself. He then assaulted the plaintiff. The Louisiana Supreme Court found that the officer's representing himself as a police officer, "while arguably an aspect of police duty, was done for the purpose of fleeing the scene of an aggravated battery in which he was involved, and evading arrest." *Id.* at 822. Unlike Morris, the officer in *Brasseaux* committed the assault in a context unrelated to his position and duties as a police officer.

18

For all of the foregoing reasons, the Court finds that
Morris was acting within the course and scope of his employment,
and plaintiff is entitled to summary judgment that the City is
vicariously liable for his conduct.

## B. Plaintiff's Motion to Determine Defendant Travelers' Duty to Indemnify is Premature.

Plaintiff moves for summary judgment that an insurance
policy issued by Travelers provides coverage for the claims set
forth in her pleadings against the other defendants. In
determining an insurer's duty to indemnify, the Court is not
limited to the allegations in the complaint, but rather "must
apply the Policy to the actual evidence adduced at the underlying
liability trial together with any evidence introduced in the
coverage case." *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d
864, 877 (5th Cir. 2009). Although the interpretation of an
insurance contract presents a question of law rather than of
fact, the Court must apply the policy to the evidence presented
to determine whether there is coverage under the insuring clause
and whether a policy exclusion applies. *See id.* at 878–84
(applying Louisiana law to determine whether "[a] review of the
evidence adduced at trial, the resulting verdict and judgment,
and the applicable Louisiana law reveals that [the insured]
clearly carried its burden of establishing coverage under the

19

insuring clause"); *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La.1987) (liability "can only be determined after trial on the merits").

Here, plaintiff urges the Court to decide the issue of coverage before a determination of liability. The Fifth Circuit has made clear that "the duty-to-indemnify issue [is] not ripe when the underlying ... lawsuit has not yet been completed." *Coregis Ins. Co. v. Sch. Bd. of Allen Parish*, No. 07-30844, 2008 WL 2325632, at *2 (5th Cir. June 6, 2008) (applying Louisiana law); *see also New England Ins. Co. v. Barnett*, No. 11-30348, 2012 WL 715261, at *5 (5th Cir. Mar. 6, 2011) ("Louisiana law generally provides that until the underlying issue of liability is resolved and the defendant is cast in judgment, the issue of indemnity is premature ....") (citing *Mossy Motors, Inc. v. Cameras Am.*, 898 So. 2d 602, 607 (La.App.2005)); *Exxon Mobil Corp. v. Turner Indus. Group LLC*, 339 Fed. Appx. 441, 445 (5th Cir.2009) (under Louisiana law, determining indemnity is premature until there is a judicial finding that putative indemnitee is liable or charges against it were baseless).

Because liability in the underlying case has not yet been determined, the Court denies as premature plaintiff's motion on the duty to indemnify. *See Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities*, Inc., CIV.A. 10-1682, 2012 WL 1198611 (E.D. La. Apr. 10, 2012); *Gabarick v. Laurin Maritime (Am.), Inc.*, No.

08-4007, 08-4156, 2009 WL 43096, at *8 (E.D.La. Jan. 7, 2009);
*Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, No.
05-4202, 2006 WL 2850178, at *4 (E.D.La. Oct. 2, 2006); *Seaboard Marine Ltd. v. St. Paul Fire & Marine Ins. Co.*, No. A. 96-2446, 1996 WL 696354, at *3 (E.D.La. Nov. 25, 1996); *Faucheaux v. Prytania Med. Complex Owners Assoc.*, 642 So. 2d 242, 245 (La. App. 1994).

## IV.  CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment on the vicarious liability of the City of Thibodaux is GRANTED, and plaintiff's motion for summary judgment on Traveler's duty to indemnify is DENIED.

New Orleans, Louisiana, this 30th day of July, 2013.


_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE